1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

JOANN MARIE ONATE-RUEZGA,

**Case No. 1:14-cv-00734-GSA**

12

Plaintiff,

13

v.

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

14

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

15
16

Defendant.

17
18

**I.     INTRODUCTION**

19

Plaintiff Joann Onate-Ruezga ("Plaintiff") seeks judicial review of a final decision by the

20

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21

disability insurance and supplemental security income ("SSI") benefits pursuant to Titles II and

22

XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs,

23

which were submitted without oral argument to the Honorable Gary S. Austin, United States

24

Magistrate Judge.[1]

25

**II.    BACKGROUND AND PRIOR PROCEEDINGS[2]**

26

Plaintiff was 53 years old at the time of her hearing before the Social Security

27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 8, 10.)
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Administration. AR 39. She completed high school through the 11th grade. AR 39. Plaintiff most recently worked as a florist in January 2008. AR 40. Plaintiff is married and has one adult child. AR 40.

Plaintiff's alleged physical conditions are sciatic nerve blockage, high blood pressure, and hypo-thyroid.[3] AR 151. She also alleges mental impairments, including anxiety and depression. AR 151. On November 12, 2010, Plaintiff filed applications for disability insurance benefits under Title II and SSI under Title XVI, alleging a disability beginning on November 11, 2009. AR 128-134, 135-143. These applications were denied initially on May 31, 2011 and on reconsideration on November 1, 2011. AR 71-75, 79-84. Plaintiff filed a request for a hearing on November 23, 2011. AR 85-86. The hearing was then conducted before Administrative Law Judge William C. Thompson (the "ALJ") on September 11, 2012. AR 36. On September 25, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 15-31. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied her appeal, rendering the ALJ's order the final decision of the Commissioner. AR 1-4.

Plaintiff now challenges that decision, arguing that: (1) The ALJ erroneously rejected two recommendations contained in the opinion of Paul Martin, Ph.D., a consulting examiner; (2) the ALJ incorrectly rejected Plaintiff's testimony; (3) the ALJ incorrectly rejected the third party statement of Shawna Oñate, Plaintiff's aunt; and (4) the ALJ failed to consider the combined effects of Plaintiff's impairments.

Defendant contests Plaintiff's assessment, pointing out that: (1) The ALJ's decision appropriately incorporated Dr. Martin's opinion into the RFC; (2) various inconsistencies in Plaintiff's testimony preclude a finding that her testimony is credible; (3) the ALJ offered germane reasons to discredit Shawna Oñate's statement; and (4) the ALJ made distinct and thorough findings concerning each of Plaintiff's alleged impairments.

## III.   THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or

---

[3] Although these are the impairments that Plaintiff initially alleged in her application, the ALJ also reviewed a number of other impairments, including, among others, obesity, borderline intellectual functioning, Bell's palsy, a non-specific "hand problem," and hip pain. AR 18-19.

she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

ALJ determined that Plaintiff did not meet the disability standard. AR 15-31. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 11, 2009, the date specified in her application. AR 17. Further, the ALJ identified myalgia of the neck and shoulders, obesity, depression, anxiety, and borderline intellectual functioning as severe impairments. AR 17. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to:

. . . perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift up to 20 pounds occasionally, 10 pounds frequently. She can stand or walk in combination for at least 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. She should not be required to climb ladders, ropes or scaffolding. She should not work around heights or hazardous machinery. She is limited to occasional overhead reaching bilaterally. She is limited to work involving simple instructions. She can have restricted contact both with the public and with coworkers. 'Restricted contact' is defined as the ability to work in the presence of others, but she cannot be part of a work team or a cooperative work process.

AR 22. Plaintiff was unable to perform her past relevant work. AR 29. However, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 30.

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V.  DISCUSSION

### A.  The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as Plaintiff's own testimony, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of: (1) the opinion of Paul Martin, Ph.D., a consulting psychologist; (2) Plaintiff's testimony to the ALJ; and (3) the third party statement of Shawna Oñate. The following review of the medical record is limited to those records relevant to these issues.

### i. John English, M.D. and Amanda Crews, M.D.

Drs. English and Crews, treating physicians, oversaw Plaintiff's treatment at the Stanislaus Health Service Agency. Although Dr. English was the attending physician, much of Plaintiff's treatment occurred at the hands of various nurse practitioners and other professionals. On October 20, 2010, for example, Plaintiff was seen by a medical assistant. Plaintiff reported neck pain radiating to her shoulder and clavicle area, but had a negative Spurling's test. AR 204. Similarly, on November 10, 2010, Plaintiff was seen by a different medical assistant and reported neck and shoulder pain. AR 203. Specifically, Plaintiff could not lift her left hand above her shoulder. AR 203. Baclofen was prescribed and an MRI was ordered. AR 203.

On February 8, 2011, Plaintiff was again seen by a medical assistant. AR 219. Plaintiff complained of a sinus infection and explained that she would like to continue physical therapy, which she had last received in November 2010. AR 219. The MRI that had been ordered was not completed because Plaintiff had panicked in the MRI machine. She also explained that she wanted "to consider disability for [her] shoulder soreness." AR 219. On March 30, 2011, Plaintiff stated that she was too anxious to have an MRI taken. AR 224. She also stated that she had experienced chest pain "for years" and that the pain was worse when she moved her left arm. AR 224.

On November 18, 2011, Plaintiff met with a social worker at the Health Services Agency and reported that she had been depressed for over ten years. AR 306. On December 16, 2011, she reported that she felt anxiety over many situations in her life. AR 305. On January 20, 2012, she told the social worker that she had discontinued taking Cymbalta, which she had been prescribed, because "she would rather tolerate pain than be on a drug or medication." AR 304.

5

1

### ii.  Frank Chen, M.D.

Dr. Chen conducted a consultative examination of Plaintiff on April 14, 2011. AR 229-230. Dr. Chen noted that Plaintiff had a history of chronic pain "involving her neck, upper chest wall and shoulders for about 16 years," with an increase in pain in the last 3 years. AR 229. An examination of Plaintiff's x-rays showed "mild degenerative changes of the AC joint of the left shoulder." AR 229. Plaintiff's blood pressure was controlled by medication. AR 229. Plaintiff's daily activities consisted of cooking, light housework, washing dishes, buying groceries, using the computer, listening to music, reading, walking, and driving. AR 229. Plaintiff was in no acute distress. AR 229. Plaintiff demonstrated 5/5 motor strength in the upper and lower extremities and bilateral grip strength of 5/5. AR 230. Dr. Chen concluded that Plaintiff had no functional limitations. AR 230.

The ALJ did not explain how much weight he accorded Dr. Chen's opinion, although he adopted a more restrictive RFC than Dr. Chen suggested was appropriate. AR 24.

### iii.  Paul Martin, Ph.D.

Dr. Martin conducted a consultative mental examination of Plaintiff on April 6, 2011. AR 225. Plaintiff told Dr. Martin that she had suffered from severe anxiety and depression with symptoms of sleep disturbance, poor concentration and memory, worry, tension, and panic attacks about once per month, but has never sought mental health treatment. AR 225. Dr. Martin considered Plaintiff to be a reliable historian. AR 225. Plaintiff denied ever being placed in special education or possessing a learning disability. AR 226. She also reported that she was capable of preparing simple meals for herself and performs light household chores on a limited basis. AR 226.

Dr. Martin conducted a mental status examination and found that Plaintiff was alert and oriented x4 and that her speech was normal for tone, rate, and prosody. AR 226. Her attention and concentration were adequate, insight and judgment were fair to good, and her thought process was linear and goal directed. AR 226. A WAIS-IV test found that Plaintiff's IQ was in the low average to borderline range. AR 227. Dr. Martin also found that Plaintiff "is essentially functioning in the low average range. She was able to follow directions and problem solve

6

without difficulty. No significant cognitive impairment was observed." AR 227. He concluded

that:

> The claimant had no difficulty understanding, remembering, and carrying out simple instructions. Claimant had no difficulty with detailed and complex instructions. Claimant had mild difficulty maintaining attention and concentration for the duration of the evaluation. Claimant's pace was mildly decreased. Claimant demonstrated mild difficulty with pace and persistence. The claimant had mild difficulty enduring the stress of the interview. Claimant is likely to have moderate difficulty adapting to changes in routine work-related settings. Based upon observations of current behavior and reported psychiatric history, the claimant's ability to interact with the public, supervisors, and coworkers there appears [sic] to be moderate impairment.

AR 228.

The ALJ gave Dr. Martin's opinion significant weight, although he declined to adopt any

limitations regarding Plaintiff's moderate impairment in interacting with supervisors. AR 26.

### iv.   E. Aquino-Caro, M.D. and A. Garcia, M.D.

Dr. Aquino-Caro conducted a review of Plaintiff's medical records on May 20, 2011. AR

231. Based on Plaintiff's lack of treatment for any mental illness and the intact status of her

mental state, Dr. Aquino-Caro determined that Plaintiff had no "mental condition which would

limit [her] ability to work." AR 241. The ALJ accorded Dr. Aquino-Caro's opinion reduced

weight. AR 29.

Dr. Garcia conducted a review of Plaintiff's medical records on October 31, 2011. AR

273. Dr. Garcia found that there was insufficient evidence to substantiate the presence of any

mental disorder. AR 274. Based on the lack of treatment history, Dr. Garcia stated that there was

no evidence to suggest a limiting RFC. AR 289. The ALJ gave Dr. Garcia's opinion reduced

weight. AR 29.

### v.   I. Ocrant, M.D.

Dr. Ocrant, a reviewing physician, reviewed Plaintiff's medical records on October 31,

2011. AR 288. Dr. Ocrant concluded that Plaintiff could: occasionally lift up to 20 pounds;

frequently lift 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours

in an 8-hour workday; and occasionally engage in overhead activities. AR 285. She was also

limited to only occasional balancing activities. AR 286. The ALJ accorded Dr. Ocrant's opinion

substantial weight. AR 29.

**B.  Consideration of the Combined Impact of Plaintiff's Impairments**

In step two of the five step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three of the analysis, the ALJ is required to decide whether this impairment (or combination of impairments) meets the criteria laid out in the Social Security Administration's "Listing of Impairments." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). In considering a plaintiff's alleged impairments, the symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Id.*, *quoting Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995). However, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("in distinguishing *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990), this Court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment").

The ALJ considered each of Plaintiff's alleged impairments in his decision. At step two, the ALJ found that Plaintiff's myalgia of the neck and shoulders, obesity, depression, anxiety, and borderline intellectual functioning were severe impairments. AR 17. However, he discounted Plaintiff's hypertension, hypothyroid condition, hand pain (along with thumb pain), Bell's palsy, and hip/thigh pain as non-severe. AR 18-19. None of these conditions were thus carried over into the ALJ's step three analysis. AR 20. And at step three of his analysis, the ALJ considered plaintiff's depression and anxiety "singly and in combination," but considered Plaintiff's neck pain, obesity, and borderline intellectual functioning in isolation. AR 20-21.

Plaintiff argues that the ALJ should have considered how each of her impairments interacted with each other throughout his analysis. Plaintiff offers three theories to explain how the interaction of her impairments may have constituted a greater burden than any one of the impairments may have caused independently.

**First**, she suggests that the interaction between her "hand, elbow, shoulder, neck and hip"

pain would have caused greater impairment than pain in just her neck or just her shoulder. As evidence, she points to her testimony at the hearing, in which she discussed pain that extends through her "left elbow area" from her neck and shoulders when reaching for objects directly in front of her. AR 43-44. Such a combination of impairments could cause an RFC more restrictive than that suggested by the ALJ, which merely limited her in overhead lifting.

**Second**, Plaintiff claims that her borderline intellectual functioning could have exacerbated her mental impairments by causing her to unnecessarily fear medications (as she did when she discontinued taking Cymbalta). She also argues that it could corrupt the ALJ's findings with respect to her pain ratings in the record because she did not understand how to rate her pain on a 10 point scale.

**Third**, Plaintiff contends that her anxiety disorder may have worsened her symptoms of chronic pain because anxiety can cause a lower tolerance for pain. This theory is supported by Dr. Martin's diagnosis of pain disorder. AR 227.

Defendant responds that the ALJ properly discounted each of Plaintiff's alleged impairments, incorporated all of Plaintiff's alleged symptoms in his RFC finding, and discussed Plaintiff's impairments in great detail.

While Defendant is correct that each of Plaintiff's impairments is discussed at length in the opinion, the ALJ did not discuss the combined effects of Plaintiff's impairments to the extent required. Although the ALJ appears to have considered the combination of Plaintiff's depression and anxiety disorder at step three of his analysis, he does not appear to have considered the interaction between Plaintiff's physical impairments with each other or with Plaintiff's mental impairments.

Nor does the RFC incorporate potential interactions between the alleged impairments, as suggested by Defendant. As described above, the interaction between Plaintiff's neck, shoulder, elbow, and hand impairments seems to impair her ability to reach in front of her. AR 44 ("**Q.** What would happen to you if you reached out in front of you? Let's say you tried to pick up that water pitcher that's between you and Mr. Milam, would you have a problem with that? **A.** I could do it but the pain's in the – in here – like it shoots pain in here. **Q.** She's indicating her left elbow

1    area.") But the proposed RFC only restricts Plaintiff's **overhead** reaching.

2          The ALJ's finding that Plaintiff suffered from only five severe impairments is not

3    supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). On

4    remand, the ALJ must consider each of Plaintiff's alleged impairments individually **and in**

5    **concert with each other** to determine which constitute "severe" impairments that must be

6    considered in the rest of the analysis.

7          **C.  The ALJ's Treatment of Dr. Martin's Opinion**

8               *i.  Legal standards*

9          The weight given to medical opinions depends in part on whether they are offered by

10    treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246

11    F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily,

12    more weight is given to the opinion of a treating professional, who has a greater opportunity to

13    know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

14    1996).

15          An ALJ may reject the *uncontradicted* opinion of a treating or examining medical

16    professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a

17    *contradicted* opinion of a treating or examining professional may be rejected for "specific and

18    legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally

19    accorded superior weight, if it is contradicted by an examining professional's opinion (when

20    supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews*

21    *v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751

22    (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician

23    opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), but the ALJ need not give it any

24    weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d

25    1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

26    rejected); *see also Magallanes*, 881 F.2d at 751.

27          The opinion of an examining physician is, in turn, entitled to greater weight than the

28    opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

*Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

### ii. *Analysis*

Plaintiff asserts that two of Dr. Martin's conclusions were rejected by the ALJ. The first of the conclusions at issue—the Plaintiff had moderate difficulties in adapting to changes in routine work-related settings—was purportedly incorporated into the ALJ's RFC limiting Plaintiff to "work involving simple instructions." AR 22, 26. The second of the conclusions at issue—that Plaintiff had moderate impairment in her ability to interact with supervisors—was rejected by the ALJ because Plaintiff stated in her function report that she is a "very friendly person." AR 26, 183. Plaintiff argues that a limitation to simple instructions does not adequately incorporate a moderate difficulty in adapting to changes in routine. As a result, Plaintiff argues that the ALJ rejected the adaptation impairment without offering any justification. Similarly, Plaintiff argues that there was no legitimate rationale to reject the interaction impairment.

Defendant argues that: (1) a limitation to simple tasks can adequately capture a moderate limitation in adaptation; and (2) Dr. Martin's finding of an interaction impairment is not supported by the record because Plaintiff stated that she is a "very friendly person."

As a threshold matter, an ALJ may incorporate a moderate adaptation impairment into an RFC by restricting a plaintiff to simple, routine work. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

1174 (9th Cir. 2008) ("the ALJ's RFC finding properly incorporated the limitations identified by Dr. McCollum and Dr. Eather, including those related to pace and the other mental limitations regarding attention, concentration, and adaption").[6] The mere fact that an ALJ has "translated" a physician's opinions into "concrete restrictions" in the form of an RFC does not necessarily mean that an ALJ has rejected that physician's opinion. *Id.* ("The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.' This does not, as Stubbs-Danielson contends, constitute a rejection of Dr. McCollum's opinion"). The ALJ thus did not reject Dr. Martin's finding that Plaintiff had a moderate adaptation limitation and need not have offered reasons—clear, convincing, or otherwise—for the rejection of his opinion.

The ALJ indisputably rejects the second limitation Plaintiff raises, however:  the moderate limitation in interacting with supervisors. While Dr. Martin's opinion is contradicted by Drs. Aquino-Caro and Garcia, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Cases that have used a nonexamining physician's opinion to justify the rejection of an examining physician's opinion have thus typically relied on "the overwhelming weight of other evidence of record" to support the rejection. *Id.*, citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (rejecting examining psychologist opinion where it "conflicted with the opinions of five nonexamining mental health professionals . . . was in conflict with testimony from the claimant himself and with medical reports contained in the record").

In Plaintiff's case, the ALJ relied solely on a statement by Plaintiff that she is a "very friendly person," which was offered in response to the question "How well do you get along with authority figures" in a disability report. AR 183. That statement, alone, does not constitute

---

[6] Plaintiff contends that *Stubbs-Danielson* is distinguishable because it only discussed moderate limitations with respect to concentration, persistence, and pace, rather than to adaptation to workplace routines. Although it is true that the fact pattern in *Stubbs-Danielson* involved a concentration limitation, the text of the decision itself states that the RFC offered by the ALJ—a limitation to "simple tasks"—properly incorporates "mental limitations regarding attention, concentration, and adaption." *Stubbs- Danielson*, 539 F.3d at 1174. Nor is it apparent why a concentration limitation would be so dissimilar to an adaptation limitation as to require a wholly distinguishable RFC.

substantial evidence that Plaintiff has no impairments in interacting appropriately with supervisors. *Dalsis v. Colvin*, No. 2:13-cv-1559 DAD, 2015 WL 1021357, at *8 (E.D. Cal. March 9, 2015) (plaintiff's testimony that she "had some friends" did not demonstrate transferability into a workplace setting).

The ALJ's reasoning fails on both a quantitative and qualitative level. **First**, Plaintiff's statement is not substantial evidence because a single, vague statement by a plaintiff is not enough to dismiss a medical opinion by a consulting examiner who has performed a thorough mental examination of that plaintiff. **Second**, and more importantly, a mere statement that a plaintiff is a friendly person does not, by itself, establish that that plaintiff can be supervised without difficulty. The ability to form friendships with one person, or even many people, does not imply the ability to take supervision from another. *Hogan v. Henderson*, 102 F.Supp.2d 1180, 1190 (D. Ariz. 2000) (distinguishing supervisorial relationships from friendships, which "are a truly a mystifying phenomena for one knows not why any particular pair connects or rubs each other the wrong way"). **Third**, Plaintiff, in the same disability report, indicates that she is "not good at following instructions." AR 182. Thus, her difficulties in interacting with supervisors may arise from an inability to follow direction, rather than an inability to form personal relationships. The ALJ's reason for rejecting Dr. Martin's opinion is not supported by substantial evidence.

Plaintiff argues that the Court should credit Dr. Martin's opinion as true and remand for further consideration to determine the impact of the limitations expressed in his opinion, citing *Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009). However, *Vasquez* expressly limited its holding to the facts it confronted—a claimant who "was of advanced age and had already experienced a severe delay in her application." *Id.* at 593. Moreover, *Vasquez* applied this doctrine to a plaintiff's pain testimony, not a physician's opinion:  the purpose behind the rule was to "ensure[] that pain testimony is carefully assessed" by "requiring the ALJ to specify 'any factors discrediting a claimant at the first opportunity." *Id.* at 594. Given this purpose, it does not make sense to apply the rule in this instance and the Court declines to do so.

**D.  The ALJ's Evaluation of Plaintiff's Credibility**

13

1

*i.   Legal standards*

2    To evaluate the credibility of a claimant's testimony regarding subjective complaints of

3    pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572

4    F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented

5    objective medical evidence of an underlying impairment that could reasonably be expected to

6    produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the

7    impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged;

8    she need only show that it could reasonably have caused some degree of the symptom." *Id*.

9    (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the

10   ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific,

11   clear and convincing reasons" that are supported by substantial evidence. *Id*.

12   An ALJ can consider a variety of factors in assessing a claimant's credibility, including:

13   (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
     for lying, prior inconsistent statements concerning the symptoms, and other

14   testimony by the claimant that appears less than candid; (2) unexplained or
     inadequately explained failure to seek treatment or to follow a prescribed course

15   of treatment; and (3) the claimant's daily activities. If the ALJ's finding is
     supported by substantial evidence, the court may not engage in second-guessing.

16

17   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks
     omitted).

18

19   Other factors can include a claimant's work record and testimony from physicians and

20   third parties concerning the nature, severity, and effect of the symptoms of which the claimant

21   complains. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on

22   an inconsistency between a claimant's testimony and the objective medical evidence to reject that

23   testimony where the ALJ specifies which "complaints are contradicted by what clinical

24   observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

25   An ALJ properly discounts credibility if she makes specific credibility findings that are properly

26   supported by the record and sufficiently specific to ensure a reviewing court that she did not

27   "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

28   *ii.   Analysis*

1    The ALJ's decision questions Plaintiff's credibility with respect to the limiting effects of

2    her symptoms. AR 27 ("The claimant, however, has alleged an inability to perform all work due

3    to her alleged impairment and other symptoms"). The ALJ is thus required to provide "specific,

4    clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

5        The ALJ offers a lengthy discussion of his consideration of Plaintiff's testimony.

6    Ultimately, he offers two reasons for finding Plaintiff not credible: (1) Plaintiff's allegations of

7    pain and her limitations are "not consistent with the record"; and (2) Plaintiff's daily activities are

8    inconsistent with the alleged extent of her disabilities. AR 27-28. The Court will consider each of

9    these reasons in turn.

10       The fact that a Plaintiff's statements are not supported by the objective evidence in the

11   record may constitute a reason to find those statements unpersuasive, although it cannot represent

12   the ***only*** reason. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not

13   reject a claimant's subjective complaints based solely on the lack of objective medical evidence

14   to fully corroborate the alleged severity of pain"). When this rationale is relied on, the ALJ "must

15   be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the

16   claimant's testimony on permissible grounds." *Id.* This means that the ALJ must "identify

17   specifically which of [Plaintiff's] statements she found not credible and why." *Brown-Hunter v.*

18   *Colvin*, No. 13-15213, 2015 WL 4620123, at *5 (9th Cir. Aug. 4, 2015) (ALJ's statement that

19   "the functional limitations from the claimant's impairments were less serious than she has

20   alleged" insufficiently specific to justify rejection of testimony).

21       In his decision, the ALJ recounts each of the episodes between October 2010 and January

22   2012 in the record in which Plaintiff was noted to be in no acute distress. AR 28. He also

23   identifies the specific statement by Plaintiff which this evidence contradicts. AR 27 ("In a

24   statement submitted to the Administration on November 12, 2010, the claimant wrote, 'I want

25   you to know I love to work, but due to the amount of pain I am in, I just can't work'"). The ALJ's

26   reasoning here is sufficiently specific to cast doubt on the credibility of this statement.[7] Because

---

[7] Plaintiff argues that any inconsistencies between her testimony and the record should be attributed to the fact that
Plaintiff suffers from Borderline Intellectual Functioning and is thus a poor historian. But Plaintiff was described by
Dr. Martin as a reliable historian, despite her performance on the WAIS-IV. AR 225. Moreover, Plaintiff's argument

the presence of contrary objective evidence cannot form the sole rationale to reject a plaintiff's testimony, however, this reason is not dispositive.

The ALJ also found that Plaintiff's daily activities were inconsistent with her testimony. A Plaintiff's daily activities can also be a valid reason for an ALJ to doubt a Plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ found that Plaintiff could cook, perform light household chores, wash dishes, buy groceries, use a computer, read, and drive. AR 28. The record also indicates that Plaintiff spends her day cleaning the house, including sweeping and dusting. AR 179. Plaintiff contends that the ALJ was not sufficiently specific when discussing "which daily activities conflicted with which part" of Plaintiff's testimony. (Opening Brief 14:16-17, ECF No. 21.) But the ALJ, as noted above, specifically identified Plaintiff's claim that her pain prevents her from working as the discredited statement. Later on, he also identifies her testimony about her specific limitations as statements that are discredited by her daily activities. AR 28. Taken in conjunction with the above-mentioned inconsistencies between Plaintiff's testimony and the objective evidence, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence to disbelieve Plaintiff's allegations of her symptoms.

**E.  Third Party Credibility**

*i.  Legal standards*

Plaintiff also challenges the ALJ's rejection of a third party statement by Shawna Oñate, the Plaintiff's aunt.

Lay witness testimony as to a claimant's symptoms is competent evidence which the

---

would only make sense if the ALJ were asking Plaintiff to recount her **own** symptoms (or lack thereof) over a historical period and using inconsistencies in those answers to discredit Plaintiff. Because the ALJ used the accounts of **others** (*e.g.*, chart notes by medical providers), rather than Plaintiff, to describe Plaintiff's medical history and discredit her testimony before the Social Security Administration, Plaintiff's argument is unpersuasive.

1   Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The

2   ALJ may reject such testimony if he does so expressly by providing "reasons that are germane to

3   each witness." *Dodrill* 12 F.3d at 919. An ALJ need not reconsider each witness individually;

4   "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only

5   point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*,

6   674 F.3d 1104, 1114 (9th Cir. 2012), *citing Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

7   694 (9th Cir. 2009). An ALJ can disregard a third party statement, for example, that "conflicts

8   with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). To reject lay

9   testimony, "the ALJ need not cite to the specific record as long as 'arguably germane reasons' for

10   dismissing the testimony are noted." *Caldwell v. Astrue*, 804 F.Supp.2d 1098, 1104 (D. Or.

11   2011).

12            ***ii.   Analysis***

13            The ALJ only made brief reference to Ms. Oñate's statement, saying that "[h]er

14   representations as to the claimant's activities and functional limitations are similar to those

15   described by the claimant and are found credible only insofar as the claimant's allegations have

16   been found credible as explained above." AR 29. As the ALJ states, the functional limitations

17   alleged in Ms. Oñate's statement appear to overlap significantly with Plaintiff's own statements.

18   It was thus appropriate for the ALJ to find that Ms. Oñate's statements could be discredited for

19   the same reasons as Plaintiff's statements were: the lack of corroboration in the medical record

20   and inconsistency with Plaintiff's daily activities. *Lewis*, 236 F.3d at 511.

21            Plaintiff argues that the ALJ's rationale is inadequate because it is not specific to Ms.

22   Oñate. Put another way, Plaintiff claims that an ALJ cannot discredit a third party's testimony

23   merely because it repeats a plaintiff's testimony. But the Court does not read the ALJ's decision

24   to mean that Ms. Oñate is not credible merely because her statement parrots Plaintiff's statement.

25   Rather, the ALJ's decision found that Ms. Oñate's statement parrots Plaintiff's and that it is not

26   credible because it thus falls prey to the same deficits that characterized Plaintiff's statement. AR

27   29 ("Her representations . . . are found credible only insofar as the claimant's allegations have

28   been found credible ***as explained above***") (emphasis added). Had the ALJ intended to discredit

17

1   the statement for the reason that Plaintiff asserts, he need not have referred to his prior discussion

2   of the objective evidence in finding Ms. Oñate not credible. He would have merely stated that the

3   third party statement repeated Plaintiff's statement and rejected it on those grounds. The ALJ thus

4   provided a germane reason to find Ms. Oñate's statement not credible and committed no error in

5   doing so.

6   **VI.     CONCLUSION**

7          Based on the foregoing, the Court finds that the ALJ's decision is not supported by

8   substantial evidence in the record or free of clear legal error. Accordingly, this Court GRANTS

9   Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the

10  case is REMANDED to the Social Security Administration to allow the Social Security

11  Administration to consider the combined impact of Plaintiff's impairments and to review the

12  record to determine if there are specific and legitimate reasons which are supported by substantial

13  evidence to reject the opinion of the consulting psychologist. The Clerk of the Court is

14  DIRECTED to enter judgment in favor of Plaintiff Joann Marie Onate-Ruezga and against

15  Defendant Carolyn W. Colvin, Commissioner of Social Security.

16

17  IT IS SO ORDERED.

18      Dated:   __**September 11, 2015**__          _____**/s/ Gary S. Austin**
                                                       UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28